UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORAYNA GUILLEN DE MERCADO,

Plaintiff,

-against-

PIKASSO EMPANADAS Y MAS INC., RONALD ESPINAL, and RAFAELINA FERMIN,

Defendants.

26 Civ. 288 (GS)

**OPINION & ORDER**

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Norayna Guillen de Mercado ("Plaintiff") asserts claims for unpaid overtime wages and failure to provide wage statements and notices in this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff has entered into a Settlement Agreement and Release (the "Settlement Agreement") with Defendants Pikasso Empanadas y Mas Inc., Ronald Espinal, and Rafaelina Fermin (collectively, "Defendants") to settle this case, and Plaintiff now moves for approval of the agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (*See* Dkt. No. 19 ("Pl. Ltr.") & 19-1 ("Sett. Agmt.")).

After careful review, the Court finds that the Settlement Agreement is fair and reasonable and warrants approval. In doing so, the Court joins other courts in this District that have held that a "lodestar cross-check" is not required when reviewing the reasonableness of an award of attorneys' fees under *Cheeks*. The

Court also takes the occasion to explain why this view is not inconsistent with current Second Circuit precedent.

**A. Economic Terms**

First, the economic terms of the Settlement Agreement are fair and reasonable. Plaintiff claims total damages, including compensation owed, liquidated damages, wage notice and statement penalties, and interest, of $26,902.02. (Dkt. No. 19-2 at 5). Of that amount, $7,780.50 represents Plaintiff's claimed unpaid wages. (*Id.*). The total settlement amount under the Settlement Agreement is $20,000, with Plaintiff receiving $12,656.83 of this amount and the remainder going to her counsel as attorneys' fees and costs. (*See* Pl. Ltr. at 3; Sett. Agmt. at 2).

Thus, under the settlement Plaintiff will receive 100% of her total unclaimed wages and nearly half (47%) of her total claimed damages. Given that Defendants dispute their liability and contend that their records show Plaintiff was properly paid (*see* Pl. Ltr. at 1–2), such a recovery clearly falls within the range of what courts in this District have approved as fair and reasonable. *See, e.g.*, *Villalva-Estrada v. SXB Rest. Corp.*, No. 14 Civ. 10011 (AJN), 2016 WL 1275663, at *3 (S.D.N.Y. Mar. 31, 2016) (approving settlement granting plaintiff "47% of his maximum possible recovery, i.e., 100% of his unpaid wages and 22% of the possible statutory and liquidated damages"). Considering the totality of the circumstances and the factors set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36

(S.D.N.Y. 2012), the economic terms in the Settlement Agreement are fair and reasonable.

**B. Non-Economic Terms**

Second, the non-economic terms of the Settlement Agreement are fair and reasonable. The Settlement Agreement does not contain a confidentiality provision or a non-disparagement clause, and the parties engaged in arm's length bargaining. (Sett. Agmt. at 3–4). The Settlement Agreement also does not contain a general release; rather, the release is limited to all FLSA and NYLL claims Plaintiff may have against Defendants. (Pl. Ltr at 4; Sett. Agmt. ¶ 3). Although the release of claims is non-mutual (*see* Sett Agmt. ¶ 3), a non-mutual release has been approved where, as here, the scope of the release is limited to the wage-and-hour claims that are the subject of the lawsuit. *See, e.g.*, *Guzman v. Raffana LLC*, No. 23 Civ. 10382 (GS), 2024 WL 2112379, at *1 (S.D.N.Y. Apr. 26, 2024); *Flores Galloso v. 3821 Food Corp.*, No. 20 Civ. 1940 (RA), 2021 WL 860343, at *2 (S.D.N.Y. Mar. 8, 2021).

**C. Attorneys' Fees and Costs**

Third, the amounts payable to Plaintiff's counsel in fees ($6,666.67) and costs ($676.50) are fair and reasonable. Plaintiff's counsel will receive a contingency fee for attorneys' fees representing one-third of the overall $20,000 settlement amount, plus costs. (Pl. Ltr. at 4). A one-third contingency fee is standard in FLSA cases. *See, e.g.*, *Vargas v. Pier 59 Studios L.P.*, No. 18 Civ. 10357 (VSB), 2021 WL 6066088, at *2 (S.D.N.Y. Nov. 4, 2021) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases."); *Palacio v. E*TRADE Fin. Corp.*,

No. 10 Civ. 4030 (LAP) (DCF), 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012) (holding that "a one-third recovery" is appropriate where counsel's "fee entitlement is entirely contingent upon success" and awarding additional out of pocket expenses). At the Court's request, Plaintiff's counsel submitted his firm's engagement letter with Plaintiff, which expressly provides for a one-third contingency fee, to be calculated based on Plaintiff's gross recovery whether by way of settlement or otherwise. (Dkt. Nos. 22-1 at 2, 22-2 at 2; *see* Dkt. No. 21).

As Plaintiff does not submit proof of hours worked by counsel, the Court is unable to perform a lodestar "cross-check." However, a growing number of courts in this District have found that a lodestar cross-check is not required if the plaintiff and their counsel agreed to a one-third contingency fee and there is no evidence of fraud, deception, or overreaching. *See Almanzar v. Silver Star Properties Corp.*, 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023) (declining to perform a lodestar cross-check and noting that "[t]he very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended" as "attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended" (emphasis omitted)); *see also Talukder v. City of New York*, No. 25 Civ. 3895 (SDA), 2026 WL 1623341, at *1 (S.D.N.Y. June 5, 2026) ("[W]here there is no reason to question the reasonableness of the contingency agreement itself and the fees are 'within the range of what FLSA practitioners demand in the marketplace,'" courts have found attorneys' fees reasonable when they are

'consistent with the retainer agreement agreed to by [the] plaintiff.'" (quoting *Almanzar,* 699 F. Supp. 3d at 257)); *Santiago v. City of New York*, No. 24 Civ. 6254 (SLC), 2025 WL 2662513, at *2 (S.D.N.Y. Sept. 17, 2025) (where the engagement letter showed that plaintiffs and counsel agreed to a one-third contingency fee in advance and there was no indication of overreaching or deception, "it is not necessary to compare the one-third contingency fee [p]laintiffs' counsel will receive under the Agreement . . . with the actual hours expended—*i.e.*, a lodestar cross-check—to determine the reasonableness of the fee"); *Martinez v. Morris 1 LLC*, No. 24 Civ. 9158 (DEH) (RFT), 2025 WL 2986624, at *4 (S.D.N.Y. Aug. 29, 2025) ("I do not believe that a lodestar cross check is required in this case due to the retainer agreement between [p]laintiff and his counsel[.]"), *R&R adopted*, 2025 WL 2986448 (S.D.N.Y. Oct. 23, 2025); *Wynne v. City of New York*, No. 23 Civ. 9955 (DEH) (GWG), 2024 WL 5049770, at *4 (S.D.N.Y. Dec. 10, 2024) (holding that a one-third contingency fee was reasonable regardless of the "actual number of hours expended after the contingency fee arrangement was met"); *Rivas v. MLJ Painting Corp.*, No. 24 Civ. 4205 (AS), 2024 WL 4699961, at *2 (S.D.N.Y. Nov. 5, 2024) (declining to perform a lodestar cross-check where the plaintiff and counsel agreed to a one-third contingency fee (citing *Almanzar*, 699 F. Supp. 3d at 256)).

As Judge Gorenstein has explained, requiring a lodestar cross-check in such circumstances would serve no useful purpose; even if the lodestar was far less than the one-third contingency payment, that "would have no bearing on [the court's] assessment of the reasonableness of the fees sought," as "it is only proper that

[counsel] be permitted to collect their contracted fee given the risk they have assumed." *Almanzar*, 699 F. Supp. 3d at 256. Indeed, using a lodestar cross-check to limit counsel's award may undermine the goals of the FLSA insofar as it could reduce attorneys' incentives to litigate FLSA cases. *See id.* at 257 ("Finding such contingency fee arrangements not 'reasonable' under *Cheeks* whenever the attorneys achieve a significant benefit from the contingency arrangement will only serve to diminish the pool of attorneys willing to accept the risks in FLSA cases. This runs counter to one of the purposes of the FLSA—to provide an avenue for workers deprived of their just wages to seek redress in the courts[.]").

The Court agrees with the approach adopted in these cases and has nothing to add to the policy justification advanced in support of it. The Court does believe, however, that further explication is warranted as to a related and important issue: whether this approach is consistent with Second Circuit precedent. Those courts that have insisted on conducting a lodestar cross-check in evaluating FLSA settlements have done so in large part on the ground that Second Circuit precedent compels it. *See, e.g.*, *Galvan v. Rolling Lawns, Inc.*, No. 23 Civ. 6724 (VR), 2026 WL 1747081, at *4 n.3 (S.D.N.Y. June 17, 2026) ("Plaintiff's counsel asserts that contemporaneous time records are not required, but the Second Circuit has said that adequate documentation must be provided in support of a request for attorney's fees." (citing *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)); *Hernandez v. Compass One, LLC*, No. 20 Civ. 7040 (LJL), 2021 WL 4925561, at *4 (S.D.N.Y. Oct. 21, 2021) (acknowledging that "[r]easonable arguments could be

made on both sides of the issue as to whether the Court should receive time records at all or conduct a lodestar check," but noting that "the Court does not write on a clean slate" and concluding, in light of Second Circuit precedent including *Fisher*, that "[u]ntil this Court receives different direction, that [*i.e.*, a lodestar cross-check] is the review it will perform"); *Flores-Mendieta v. Bitefood Ltd.*, No. 15 Civ. 4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016) ("A proper fee request in this circuit 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" (quoting *Wolinsky*, 900 F. Supp. 2d at 336, which in turn relied on *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983))).

In certain circumstances, a lodestar calculation clearly is required under Second Circuit law. In *Carey*, for example, the Second Circuit "announce[d] for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit," finding it "appropriate to convert our previously expressed preference for contemporaneous time records into a mandatory requirement." *Id.* at 1147 (citation omitted). The court thus held that "[a]ll applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1154. However, *Carey* was a class action in which plaintiffs' counsel, after negotiating a consent decree providing relief for the class, made a separate application to the district court for an award of attorneys' fees to be paid by defendants. *See id.* at 1139. It was in that context—*i.e.*, an application

for "court-ordered attorney's fees"—that the Second Circuit confirmed, and made mandatory, its previously expressed preference for submission of contemporaneous time records. *Id.* at 1147 (citing *In re Hudson & Manhattan R.R. Co.*, 339 F.2d 114, 115 (2d Cir. 1964), where the court had announced that "any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent").

*Carey*'s holding would apply to an FLSA case in which a plaintiff won a judgment at trial (or on summary judgment) and then applied to the court for an award of attorneys' fees. It would also extend to the settlement of an FLSA case where (as sometimes happens) the parties, instead of negotiating a resolution as to the plaintiff's attorneys' fees, agree to submit the issue to the court for resolution. In those contexts, a lodestar calculation would be essential to determine whether the amount requested by counsel was a proper amount to require the defendant to pay. But in the typical FLSA settlement, such as the one here, the payment made by the defendant settles the issue of attorneys' fees as well as the plaintiff's recovery, and both the defendant and the plaintiff agree on the amount to be received by plaintiff's counsel. The court is not asked to determine the appropriate fee amount. Rather, review is limited under *Cheeks* to the reasonableness of the agreed-upon fee amount. In that context, *Carey*'s rationale does not apply.

The Second Circuit has also said that the lodestar "creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522

F.3d 182, 183 (2d Cir.2008)); *see also Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010) (stating that "the lodestar method yields a fee that is presumptively sufficient to achieve" the objective of encouraging capable attorneys to undertake civil rights cases). In *Millea*, the Second Circuit further held: "While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error." *Millea*, 658 F.3d at 166. Here again, however, context matters. *Millea*, though not a class action, was a case under the Family Medical Leave Act ("FMLA") where the plaintiff obtained a damages award at trial and counsel then applied for a statutory award of attorneys' fees. *Id.* at 159–61. Thus, as in *Carey* but unlike here, there was no agreed-upon fee award, and the district court was required to decide how much the defendant should pay. The rationale for the *Millea* rule likewise does not extend to FLSA settlements that include agreement on an amount for fees. *See Fraticelli v. MSG Holdings, L.P.*, No. 13 Civ. 6518 (HBP), 2018 WL 5004867, at *4, *6 (S.D.N.Y. Oct. 16, 2018) (applying *Millea* and noting that courts utilize the lodestar method "when the parties to a FLSA action agree to a separate attorneys' fee determination that is independent of a plaintiff's settlement amount, such as the case here").

The lodestar does play a role in evaluating certain settlements, even when the settlement includes an agreed-upon amount for attorneys' fees. When a class action case is settled, the amount of class counsel's fee must be reviewed by the court for reasonableness under Rule 23 of the Federal Rules of Civil Procedure. *See*

Fed. R. Civ. P. 23(h). Where the attorneys' fees come out of a common fund created to compensate class members, courts use two distinct methods to determine whether the fees are reasonable: the lodestar is one and the "percentage of recovery" method is the other. Even when the percentage method is used, the Second Circuit "encourage[s]" the practice of requiring documentation of hours so that the district court may conduct a lodestar cross-check on the reasonableness of the award. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). "Courts that adopt the percentage method typically use the lodestar calculation to cross-check the award," *Ling v. Cantley & Sedacca, L.L.P.*, No. 04 Civ. 4566 (HB), 2006 WL 290477, at *4 (S.D.N.Y. Feb. 8, 2006), even if they do not scrutinize the fee records as "exhaustively" in that context, *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 496 (S.D.N.Y. 2017) (quoting *Goldberger*, 209 F.3d at 50).

Such class action settlements also differ materially from the type of non-class action FLSA settlement presented in this case. In particular, while class action counsel may have an engagement letter with the class representative or representatives, no contractual agreement exists between counsel and other class members, most or many of whom counsel will have never met. Therefore, unlike the situation here, in the typical class action settlement there is no contracted fee arrangement between counsel and the class members whose interests may be affected by the size of the attorneys' fee award. The court must therefore determine the reasonableness of the fee with reference to the lodestar or at the least (where the percentage method is used) a lodestar cross-check. That justification does not

apply here: the sole plaintiff affected by the fee award, Ms. Guillen de Mercado, agreed in the engagement letter and again as part of the settlement to pay her counsel a one-third contingency fee.

That brings us to the Second Circuit's decision in *Fisher*, which as noted above is sometimes cited as requiring a lodestar cross-check in FLSA cases. But *Fisher* does not so hold. In *Fisher*, the Second Circuit reversed a district court ruling that had reduced a fee award on *Cheeks* review based on a presumption that an award above 33% of the plaintiff's recovery is disproportionate. *Fisher*, 948 F.3d at 602–03. The practice of some district courts in applying "a proportionality limit on attorneys' fees in FLSA actions," the court held, comported with neither the FLSA's text nor its underlying purpose. *Id.* The court reasoned that, "[b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high." *Id.* at 603. The court went on to hold that, while district courts are required to review FLSA settlements for reasonableness under *Cheeks*, including the award for attorneys' fees and costs, this duty "does not grant the court authority to rewrite contract provisions it finds objectionable." *Id.* at 606.

Nothing in the analysis in *Fisher* says that courts must perform a lodestar cross-check in evaluating a fee award under *Cheeks*. To the contrary, the decision recognizes the importance of crafting standards in this area that encourage plaintiffs' attorneys to provide legal services to low-wage employees whose rights

under the FLSA may have been violated, *see id.* at 603—the same goal promoted by those courts that have given effect to reasonable contracted contingency fee arrangements without requiring a separate lodestar justification for the proposed award. *See Almanzar*, 699 F. Supp. 3d at 257. *Fisher* also recognizes that the standard to be applied should be sensitive to the particular context involved. *See Fisher*, 948 F.3d at 600–01 (distinguishing among the different "contexts" in which the issue of attorneys' fees arises in FLSA cases); *id.* at 606 (criticizing the district court's treatment of the issue "as if it was being presented with a fee application separately made after a plaintiff has prevailed through litigation or settlement," and explaining that when the issue "is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs, . . . the inquiry is different as the settlement is submitted for approval, not adjustment or revision").

Granted, in setting forth general principles in an "Applicable Law" section, the Second Circuit in *Fisher* stated: "The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Id.* at 600. For that proposition, however, the court cited only *Carey*, 711 F.2d at 1154, which (as explained above) involved an application for the court to determine a reasonable fee award. It would make little sense to read this lone sentence in *Fisher* as mandating a lodestar cross-check in the entirely different context of an agreed-upon fee award in a non-class action FLSA settlement, and the Court declines to do so.

Moreover, under the rule adopted in cases such as *Almanzar*, courts do not

dispense with the need for "adequate documentation supporting the requested attorneys' fees and costs," *see Fisher*, 948 F.3d at 600. Rather, as the Court did in this case (Dkt. No. 21), courts *do* insist on documentation: namely, the engagement letter memorializing the agreement between plaintiff and counsel. The court also conducts a review of the agreement and the surrounding circumstances to determine that the agreement is reasonable and there are no signs of fraud, deception, or overreaching. *See Almanzar*, 699 F. Supp. 3d at 256–57. That is sufficient to discharge the court's "duty to review an FLSA settlement for reasonableness to prevent any potential abuse" in relation to the attorneys' fee award. *See Fisher*, 948 F.3d at 606.

For all these reasons, the Court concludes that a proposed attorney's fee included as part of an FLSA settlement may be deemed reasonable if it reflects a contingency fee agreed to by the client in advance in a written engagement letter, that in such a circumstance a lodestar cross-check need not be performed, and that such an approach is consistent with Second Circuit precedent.

Applying that approach here, the Court finds, as already noted, that the one-third contingency fee in Plaintiff's engagement letter is market-standard and reasonable.[1] There is no indication of fraud, deception, or overreaching. To the

[1] The Court also notes that this fee is based on one-third of the *total* settlement amount, even though that amount also includes $676.50 in litigation costs that go to counsel rather than to Plaintiff. In effect, then, counsel is receiving fees on the basis of its own costs, and not just on the basis of the amount going to Plaintiff. While the logic and fairness of this approach may be questioned, *see, e.g.*, *Munoz v. Me Liquors Corp.*, No. 22 Civ. 7209 (SJB), 2024 WL 3169494, at *1–2 (E.D.N.Y. June 25, 2024), it is consistent with the terms of the engagement letter here (*see* Dkt. Nos. 22-1 at 2–3, 22-2 at 2–3) and increases the amount going to counsel by only $225.50. The Court will approve this methodology here given that Plaintiff is only "minimally affected" by the difference. *Narayanasamy*

contrary, the engagement letter that was presented to and signed by Plaintiff is in Spanish, evincing counsel's efforts to ensure that his client understood the terms of the agreement. Because Plaintiff's counsel has provided proof of a reasonable contingency arrangement in line with what is standard for FLSA cases, this Court will accept that contingency arrangement without performing a lodestar cross-check.

**D. Conclusion**

This motion for approval of the Settlement Agreement is **APPROVED**.

**SO ORDERED.**

DATED: New York, New York
August 21, 2026

GARY STEIN
United States Magistrate Judge

*v. Avulov*, No. 25 Civ. 81 (AEK), 2025 WL 3162420, at n.3 (S.D.N.Y. Oct. 14, 2025); *Ojeda v. Coyote River Consultants, Inc.*, No. 24 Civ. 8774 (AEK), 2025 WL 2747488, at n.3 (S.D.N.Y. Aug. 11, 2025).